UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE A. ADAMES,

        Petitioner,

v.                                                            Case No. 18-C-362

WARDEN BRIAN FOSTER,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

A jury convicted Petitioner Jose Adames on January 15, 2014, in the Circuit Court for Milwaukee County on one count of first-degree sexual assault by use of a dangerous weapon, two counts of armed robbery by use of force, and one count of false imprisonment–all as a party to a crime– contrary to §§ 940.225(1)(b), 943.32(2), 940.30, and 939.05 of the Wisconsin Statutes. On March 11, 2014, the circuit court imposed a bifurcated sentence totaling 68 years of initial confinement followed by 32 years of extended supervision. After first seeking relief in the Wisconsin courts, Adames filed a federal habeas petition pursuant to 28 U.S.C. § 2254, alleging that his conviction and sentence violated his rights under the United States Constitution. Adames claims that his trial counsel was ineffective for failing to object to hearsay testimony by a nurse who read a statement made by one of the victims and for failing to object to the introduction of evidence that heroin was found in his co-defendant's home. ECF No. 1 at 6–7. He also contends that his postconviction counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to object to jury instructions. *Id.* at 8. For the reasons that follow, Adames' petition will be denied and the case dismissed.

**BACKGROUND**

B.G.-T. and her significant other H.S. were watching movies in their home with their 4-year-old son on the evening of June 28, 2013, when three masked men entered the house with guns. One of the men hit H.S. with a gun, and he was tied up and taken to the attic with his son. The men then sexually assaulted B.G.-T. repeatedly and forced her to drive them to the bank to retrieve cash from the ATM both before and after midnight to circumvent her account's daily withdrawal limits. Eventually, they forced her at gunpoint to load her possessions—including electronics, DVDs, and social security cards—into her car. After tying B.G.-T. to a chair, the three men drove away in the loaded car. B.G.-T. managed to loosen her restraints after counting to 30, as the men had instructed her to do. She then freed H.S., and they ran to the neighbor's house to call the police.

B.G.-T. and H.S. later identified Adames, Omar Rivera, and Julio Quiles-Guzman as the three men who had broken in, assaulted B.G.-T., and robbed them. At trial, Rivera testified against Adames and Quiles-Guzman, and the prosecutor presented DNA evidence linking the men to the crimes. The jury found both men guilty. Adames filed a motion for postconviction relief asserting that his trial counsel was ineffective for failing to raise a hearsay objection to testimony of a nurse who treated B.G.-T. and for failing to raise relevancy and unfair prejudice objections to testimony of a police officer that officers found heroin in Quiles-Guzman's residence. After the circuit court denied his motion, Adames raised both claims in an appeal to the Wisconsin Court of Appeals, which rejected his arguments and affirmed both the circuit court's judgment of conviction and its order denying his motion for postconviction relief. ECF No. 10-5. Adames petitioned the Wisconsin Supreme Court for review, and that court denied his petition on July 11, 2017. ECF No. 10-8.

# ANALYSIS

Federal review of state court convictions is limited to claims that the petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order to obtain federal review of such a claim, the petitioner must first exhaust his state court remedies. § 2254 (b)(1). To properly exhaust state remedies, a petitioner must present his claims to the state courts at each level of the state's established review process. *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009). Even then, the application cannot be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law" or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an unreasonable application of clearly established federal law if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. A state court decision also involves an unreasonable application of clearly established federal law if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407.

This standard is difficult to meet and was made so intentionally. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To meet this standard, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

All three of Adames' grounds for relief assert that he was denied the effective assistance of counsel. A claim of ineffective assistance of counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) that counsel's deficient performance deprived the defendant of a fair trial. *Id*. at 687–88. A defendant satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Given the additional level of deference that applies to federal review of state court decisions under § 2254(d), the burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). When § 2254(d) applies, the court must determine "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," not whether counsel's actions were reasonable. *Harrington*, 562 U.S. at 105. Rather than showing that "he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," a habeas petitioner must show that the state court applied *Strickland* in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). Indeed, this "doubly deferential standard" results in a "review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

**A. Failure to Raise a Hearsay Objection to the Nurse's Testimony**

Adames first argues that his trial counsel was ineffective for failing to raise a hearsay objection to testimony at trial by the nurse who treated B.G.-T. after the sexual assaults. Specifically, Adames objects to an exchange at trial when the prosecutor, referring to B.G.-T., asked the nurse, "[W]hat did she tell you happened?" ECF No. 10-13 at 67. The nurse responded by reading from her treatment notes for the encounter:

> Patients states [sic] that last night around 8 p.m., there was a home invasion. And she was sexually assaulted by - - by three men who invaded her home. Patient reports that they came in through the window . . . very quietly. And once in the house they pointed a gun at . . . her significant other.

Patient says that herself and significant other were tied up with tape and blindfolded. Patient states that they told her give me your money. Patient states she told them she had no money in the home, but that she had $1,300 in the bank. Patient reports that initially two of the guys drove her to the bank. She was only able to get $300 from her account.

> When they returned to the house, the patient states that two of the three guys sexually assaulted her.

5

> Patient reports she was told to take her clothes off, but she refused. Patient states that one of the two males took her clothes off and had her go on her knees. Both men forced her to perform oral sex on them and was then sexually assaulted vaginally.
>
> Patient states that while she was being sexually assaulted, they had a gun pointed at her.
>
> Patient reports that after midnight, they again forced her to go to the bank for more money.
>
> Patient states that when they returned from the bank, she helped them load all her electronic items into their car.
>
> And after they were done, they tied her up again and told her to count to 30. Patient states that they left one arm untied. And she then proceeded to free herself and her significant other.
>
> Her partner and self then went outside to a neighbor's house for help.
>
> Patient reports contact as penis-to-vagina, to vagina, penis-to-mouth and penis to hand.

ECF No. 10-13 at 67–69. Adames acknowledges that some of this testimony was admissible under Wis. Stat. § 908.03(4), which provides an exception to the hearsay rule for statements "made for purposes of medical diagnosis or treatment and describing medical history." But he contends that his counsel was ineffective for failing to object to the statements about the perpetrators wanting money, taking B.G.-T. to the ATM, and forcing her to load personal items into her car because those statements had nothing to do with medical diagnosis or treatment.

The Wisconsin Court of Appeals considered and rejected this argument, determining that his ineffective assistance of counsel claim would necessarily fail because Adames could not demonstrate that he was prejudiced even if the statements reflected impermissible hearsay. ECF No. 10-5 ¶ 7. In support of this determination, the appellate court expressly agreed with and quoted from the circuit's analysis in its order denying the postconviction motion:

> The evidence against the defendant was simply overwhelming. [H.S.] identified all three men in the line ups, and [B.G.-T.] identified Omar Rivera's voice. She also identified the defendant in court. The testimony of the victims and Omar Rivera's testimony were consistent and were further supported by forensic evidence such as the stolen items located at Rivera's and Quiles-Guzman's residences and the burned-out car. Finally, the Y-STR DNA evidence consistent with the defendant was located where [B.G.-T.] stated that he ejaculated, and Quiles-Guzman was determined to be a major contributor of DNA located in her vaginal and anal area [B.G.-T.'s] credibility was not attacked, nor was her testimony in conflict with anyone else's. If [the nurse's] testimony about [B.G.-T.'s] statement bolstered [B.G.-T.'s] testimony, its influence was minimal.

*Id.* (alterations in original). Based on all of these factors, the appellate court concluded that there was "no reasonable probability" that the jury would not have convicted Adames had it not heard the challenged testimony.

Under the "doubly deferential" standard of review that the court must apply when evaluating the Wisconsin Court of Appeals' decision, there is clearly a reasonable argument that Adames' trial counsel satisfied *Strickland*'s strict standard. Not only did DNA evidence establish a firm link between Adames and the crimes, but also B.G.-T. testified at trial and identified Adames as one of her assailants. ECF Nos.10-10; ECF No. 10-11 at 8–9. B.G.-T.'s availability at trial is particularly relevant to Adames' claim: because B.G.-T. testified, Adames had the opportunity to cross-examine her about the hearsay statements that the nurse read into the record from her progress notes. As a result, Adames had the ability to cross-examine B.G.-T. directly, thus mitigating any prejudice caused by the statements, even if their admission was improper. *Cf. United States v. Matlock*, 415 U.S. 164, 177 (1974) ("[W]e note that Mrs. Graff was a witness for the respondent at the suppression hearings. As such, she was available for cross-examination, and the risk of prejudice, if there was any, from the use of hearsay was reduced."). Consequently, the Wisconsin Court of Appeals reasonably applied *Strickland* when it determined that Adames' was not prejudiced by the nurse's reading of the progress notes recounting B.G.-T.'s statements.

7

## B. Failure to Raise Relevance and Unfair Prejudice Objections to the Heroin

Next, Adames argues that his trial counsel was ineffective for failing to object to testimony by a police officer that police found suspected narcotics, later determined to be heroin, in the bedroom of Quiles-Guzman, Adames' co-defendant. During testimony regarding a search of Quiles-Guzman's bedroom, the police officer discussed a picture from the search depicting the heroin. ECF No. 10-12 at 90–92. Adames argues that the evidence regarding the heroin was not relevant under Wis. Stat. § 904.01, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Wis. Stat. § 904.03, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Adames thus argues that the heroin evidence was irrelevant to the charges against him, that its mere presence in the record in support of charges against his co-defendant unfairly prejudiced him, and that his trial counsel was ineffective for failing to object to its introduction at trial.

Again, the court looks to the decision of the Wisconsin Court of Appeals, which considered this argument on Adames' direct appeal. ECF No. 10-5 ¶¶ 8–9. The appellate court found that this ineffective assistance claim also failed for lack of prejudice. *Id.* ¶ 9. Once again, the appellate court quoted and expressly agreed with the reasoning in the circuit court's order denying Adames' postconviction motion: "[T]he jury was aware that the defendant was not being charged with a drug offense and, considering the weight of the evidence against the defendant, the court cannot find that there is a reasonable probability that the jury would have reached a different conclusion had it not heard testimony that heroin was located *in someone else's home*." *Id.* (alteration in original).

In the context of assessing whether the trial of joint defendants is appropriate under the Federal Rules of Criminal Procedure, the United States Supreme Court has observed that a risk of

8

prejudice "might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). In such cases, any "risk of prejudice will vary with the facts in each case." *Id.* Although "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant . . . might present a risk of prejudice," *id.* (citing *Bruton v. United States*, 391 U.S. 123 (1968)), that is not the situation here. Rather, as the circuit court and appellate court both observed, the evidence of heroin in Quiles-Guzman's bedroom had nothing to do with Adames—Adames was not facing charges for a drug crime, and there was no allegation that Adames possessed the heroin or that it was found in his home. In light of the overwhelming physical and testimonial evidence of Adames' guilt already discussed, the court therefore concludes that the Wisconsin Court of Appeals also reasonably applied *Strickland* in concluding that Adames was not prejudiced by the admission of the heroin evidence.

**C. Ineffective Assistance of Postconviction Counsel**

Finally, Adames argues that he is entitled to habeas relief because his postconviction counsel was ineffective for failing to argue that his trial counsel was ineffective for not challenging the jury instructions. Adames objects to the following statement made by the judge while instructing the jury:

> If you are satisfied - - if you are satisfied, you must find the defendant guilty of first-degree sexual assault as a party to a crime, and you should - - I should say if you're not so satisfied, you must now find the defendant guilty of first-degree sexual assault as a party to a crime, and you should consider whether or not the defendant's guilty of second-degree sexual assault as a party to a crime . . . .

ECF No. 10-4 at 34–35. In his answer, Respondent asserts that Adames has procedurally defaulted on this claim because he did not present it through one complete round of state court review.

As noted above, an application for a writ of habeas corpus from a person in state custody shall not be granted unless it appears that (a) the applicant has exhausted state remedies or (b) there

9

is no available state corrective process or circumstances exist that render such process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). To exhaust a claim, the petitioner must provide the state courts with a full and fair opportunity to review his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A specific claim is not considered exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). This requires the petitioner to appeal adverse state court decisions all the way to the state supreme court when doing so is part of the ordinary appellate review procedure in that state. *O'Sullivan*, 526 U.S. at 847. The petitioner must allow the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. The doctrine of exhaustion allows a state's courts the "initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971) (quoting *Fay v. Noia*, 372 U.S. 391, 438 (1963)). A petition for writ of habeas corpus should be dismissed if state remedies have not been exhausted as to any one of the petitioner's federal claims. *Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 667 (7th Cir.1990).

After the Wisconsin Supreme Court denied Adames' petition for review on his direct appeal in July 2017, Adames filed a motion in the Milwaukee County Circuit Court on August 28, 2017, seeking postconviction relief under Wis. Stat. § 974.06 on the grounds that his postconviction counsel was ineffective for failing to argue that his trial counsel was ineffective for not objecting to the jury instruction. ECF No. 1 at 5; ECF No. 10 ¶ 3. The circuit court's docket indicates that motion was denied on August 31, 2017. *State v. Adames*, No. 2013CF3169 (Milwaukee Cty. Cir.

10

Ct.).¹ However, there is no indication that Adames appealed that decision following denial of his § 974.06 motion by the circuit court.

Because Adames therefore did not complete one entire round of state court review on this claim of ineffective of assistance of postconviction counsel, he has procedurally defaulted and his claim must be dismissed. "When a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates: (1) cause for and actual prejudice arising from failing to raise the claim as required, or (2) that enforcing the default would lead to a 'fundamental miscarriage of justice.'" *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Petitioner has not demonstrated cause and prejudice or that a fundamental miscarriage of justice would result from enforcing the default here. Therefore, the court will enforce the procedural default.

Even if the merits of this claim were properly before the court, the result would be the same. Though the limited portion of the trial judge's charge to the jury on which Adames relies did not fully address all of the elements of the offense of First-Degree Sexual Assault, instructions are intended to be read as a whole. *Rittenhouse v. Battles*, 263 F.3d 689, 693–94 (7th Cir. 2001). The trial court's instructions taken as a whole adequately explained to the jury the elements of First-Degree Sexual Assault as charged in the Information. This is sufficient. *See Watson v. Anglin*, 560 F.3d 687, 692 (7th Cir. 2009) ("The mere possibility that an instruction could conceivably be misunderstood does not render the instruction, or a conviction based on the instruction, unconstitutional."). Finally, even if error was committed, the state courts' finding of overwhelming evidence of guilt precludes any right to relief on this claim as well. *Id.* at 693 ("The strong evidence

---

¹ *Available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2013CF003169&countyNo=40&mode=details.

of Watson's guilt vitiates his claim that he suffered prejudice as a result of counsel's failure to object to the jury instruction."). For this reason, too, Adames' claim of ineffective assistance of counsel based on the failure to object to an improper jury instruction fails.

## CONCLUSION

For the reasons given above, Adames is not entitled to federal habeas relief on any of his claims. His petition for a writ of habeas corpus is therefore **DENIED**, and the Clerk is directed to enter judgment **DISMISSING** the case. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would believe that Petitioner has made a substantial showing of the denial of a constitutional right.

Petitioner is advised that the judgment the Clerk will be entering is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Petitioner decides to appeal, he should also request the court of appeals to issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** this  5th  day of September, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court